Adam R. WILSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 356, 2007.

Supreme Court of Delaware.

Submitted: March 19, 2008.
Decided: June 10, 2008.

Leo John Ramunno, Esquire, Wilmington, DE, for Appellant.

Timothy J. Donovan, Esquire, Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice,
BERGER and JACOBS, Justices.

JACOBS, Justice:

Adam R. Wilson ("Wilson"), the defendant below, appeals from a final judgment of conviction entered by the Superior Court. A jury found Wilson guilty of robbery in the first degree, wearing a disguise during the commission of a felony, and conspiracy in the second degree. On appeal, Wilson claims that the Superior Court erred by: (1) not allowing the co-conspirator's plea agreement to be admitted into evidence unredacted; (2) not declaring a mistrial based on the prosecutor's allegedly prejudicial statement to the jury; and (3) admitting evidence of other bad acts and drug use, and evidence amounting to hearsay. On the first claim, we reverse and remand. With respect to the last two claims, we affirm.

### FACTS

On August 2, 2006, a man wearing a blue bandana over his face robbed a Speedy Mart convenience store in Wilmington at gunpoint. Harshad Rabari ("Rabari"), who was working at the Speedy Mart, turned over the store's cash to the robber, whom he later described to the police as a skinny, tall white man. Two days later, the Speedy Mart was robbed again. Rabari testified that the second robber was a different white man, who also wore a bandana but was shorter and heavier than the first robber. After the second robbery, Rabari saw the second robber cross the street and meet up with a man who resembled the first robber. Both men fled on foot.

At trial, an eyewitness testified that at the time of the first robbery, he saw two white men—one taller and thinner than the other—run into a nearby apartment building. A resident of the building told police that on August 4, 2006, around the time of the second robbery, she saw two white men who did not live there leaving the building. The resident further testified that although she did not see the two men from the front, one was shorter than the other. After the second robbery, a police dog tracked the suspects to the same apartment building.

Mercedes Stanton ("Stanton"), another resident of the building, told police that friends of her ex-boyfriend sometimes stayed at her apartment. Stanton accompanied the police to the Speedy Mart to view surveillance tapes, and identified Jeffrey Wilkinson ("Wilkinson") as the August 2, 2006 robber, and Wilson as the August 4, 2006 robber.[1] A search of Stanton's apartment produced blue "handkerchiefs" and three air pistols. No fingerprints were found on the pistols. At trial, Stanton testified that before the police asked her to view the surveillance tape, they told her that the robberies were connected to someone in her apartment. During Stanton's cross-examination, the following exchange took place:

Q: And from the video ... what is it from that that [sic] you can recognize the person that you know as [Wilson]?

A: Regardless of the bandana around his face, you can still tell the physical features of a person when you've been around them long enough to know what they look like.

Q: What physical features did you rely on?

A: His build, his hair. I can tell what he looks like.

Q: You have never seen anybody else that looks like that individual?

---

1. The surveillance tapes showed two men wearing bandanas.

A: Not anyone that I have associated with in my apartment.

Stanton further testified that she had several bandanas that she wore, that she owned two air pistols, and that she believed her ex-boyfriend, who also lived in the apartment, owned another air pistol.

Wilkinson was arrested and confessed to robbing the Speedy Mart on August 2, 2006 while Wilson was the lookout. Wilkinson admitted that he and Wilson switched roles for the August 4, 2006 robbery. In his videotaped confession, Wilkinson told the police that he and Wilson had committed other robberies together, and that their reason for robbing the Speedy Mart was that they needed money for drugs and cigarettes. Wilkinson accepted a plea from the State and testified at Wilson's trial both for the State and as a defense witness. In addition, Wilkinson's videotaped confession was admitted into evidence at trial and played to the jury. The portion of the videotape explaining why they had robbed the Speedy Mart was left unredacted, but the part referencing the other robberies was redacted.[2] At trial, Wilkinson did not mention the other robberies but testified that he and Wilson robbed the Speedy Mart store because they "had no money, [were] hungry, wanted cigarettes, [and] had a drug problem." Wilson stated that he received cigarettes and one half of an OxyContin pill in "payment" for acting as the lookout during the second robbery.

Wilkinson also testified that he was incarcerated as part of his plea to first degree robbery, and that other robbery charges were pending against him. Although Wilkinson testified that he was not promised anything else in exchange for his testimony against Wilson, he believed his testimony could also help resolve the other pending robbery charges. During cross-examination, Wilkinson's plea agreement was admitted into evidence. As requested by the State, the sentence recommendation was redacted over defense counsel's objection that he should be permitted to explore that recommendation to establish Wilkinson's bias, during Wilkinson's cross-examination. The trial court ruled that because Wilson was facing the same charges to which Wilkinson had already pled, it would be improper for the jury to consider the consequences of its verdict against Wilson. Hence, the sentencing recommendation was redacted.

During his opening statement at trial, the prosecutor stated that "despite the disguises worn on these separate occasions by [Wilson] and [Wilkinson] [Rabari was] able to pick them out of a photo line-up." Defense counsel objected to that statement and to the admission of the photo identification, because that evidence had not been properly provided to the defense during discovery. The trial court ruled the evidence inadmissible. Despite the trial court's ruling, another reference to that excluded evidence was made during trial. During Rabari's direct examination by the State, the following exchange took place:

Q: Do you know if on that date, on [August] 2nd, 2006, the police apprehended anyone? Did they arrest anyone that you know of?

A: Yeah. He showed me picture. I said—

Defense counsel objected and a sidebar ensued, in which the State clarified that it was not asking a "line-up" question but, rather, was looking for a "no" response.

2. Officer Steven Morrissey, however, mentioned during his testimony what Wilkinson had told him about the other robberies.

No other reference to the photo line-up was made during the trial.

At the conclusion of the trial, the jury found Wilson guilty of first degree robbery (two counts), wearing a disguise during the commission of a felony (two counts), and second degree conspiracy (two counts). This appeal followed.

## ANALYSIS

### I. Cross–Examination of the Co–Conspirator

The first issue before us is whether the Superior Court erred by not allowing a co-conspirator's (Wilkinson's) *unredacted* plea agreement to be admitted into evidence.[3] Wilson contends that by redacting the sentence recommendation from Wilkinson's plea agreement, Wilson's right to effectively cross-examine Wilkinson about his potential bias was infringed, in violation of Wilson's constitutional rights under the Confrontation Clause of the Sixth Amendment.[4] We review claims of constitutional violations *de novo*.[5]

This Court has held that "[i]t is well-established that the bias of a witness is subject to exploration at trial and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' Moreover, 'cross-examination on bias is an essential element of the constitu-tional right of confrontation.' "[6] As we stated:

> In *Weber* this Court set forth a two-part test for determining whether limitations imposed by the trial judge on a relevant line of cross-examination violate the accused's right of confrontation. Specifically, we said that we would look to the cross-examination permitted to ascertain (1) if the jury were exposed to facts sufficient for it to draw inferences as to the reliability of the witness and (2) if defense counsel had an adequate record from which to argue why the witness might have been biased. Clearly, the trial court's decision to prohibit all questioning concerning the dismissal of charges against [the witness] ... prevented the jury from considering facts from which it could have drawn inferences about [the witness'] testimonial reliability. Under the circumstances, the defense had a right to introduce such testimony.[7]

Although there is no Delaware case directly on point (*i.e.*, where the witness was a co-conspirator who had entered into a plea agreement with the State), the federal courts have decided the issue now before us. The Third Circuit held in almost identical circumstances that a defendant may inform the jury not only of the fact that

---

3. At trial, defense counsel objected to the sentence recommendation in Wilkinson's plea agreement being redacted. On appeal, Wilson's argument is focused on the inability to cross-examine Wilkinson about his sentence, not upon the plea agreement entered into evidence. For purposes of Wilson's argument, the issue is essentially the same.

4. Wilson does not also claim that the same ruling violated Article 1 § 7 of the Delaware Constitution.

5. *Nalley v. State*, 2007 WL 2254539, at *3 (Del.Supr.) (citing *Washington v. State*, 836 A.2d 485, 487 (Del.2003)).

6. *Van Arsdall v. State*, 486 A.2d 1, 6 (Del. 1984) *rev'd* on other grounds, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Weber v. State*, 457 A.2d 674, 680 (Del.1983); *Wintjen v. State*, 398 A.2d 780, 782 (Del.1979)) (internal citations omitted).

7. *Id.* at 6 (citing *Weber*, 457 A.2d at 682; *United States v. Summers*, 598 F.2d 450, 461 (5th Cir.1979)) (internal citations omitted).

the witness received prosecutorial leniency for his testimony, but also of the "concrete details of [the witness'] agreement with the government."[8]

Because Wilkinson's unredacted plea agreement is not in the record, the extent of his sentence reduction is not known. The magnitude of a witness' sentence reduction could significantly impact a jury's impression of the witness' credibility.[9] Had the jury been told of the extent of the benefit Wilkinson received, it might have developed a different impression of Wilkinson's credibility. In our view, the specifics of Wilkinson's plea agreement would have been an appropriate subject of inquiry during his cross-examination.

■ The State argues that a jury should not be told of the consequences of its verdict[10] and that the trial court has discretion to limit the cross-examination of a witness. It is the law that a trial judge may limit cross-examination "to preserve the witness' constitutional immunity from self-incrimination, to prevent attempts to harass, humiliate or annoy him, or where the information sought might endanger the witness' personal safety."[11] But, prohibiting the jury from learning about Wilkinson's sentence recommendation in this case did not serve any of these purposes. Moreover, the State's interest in withholding the sentencing information was outweighed by Wilson's constitutional rights under the Confrontation Clause.[12] Therefore, Wilson's right to cross-examine Wilkinson about his sentencing was unconstitutionally limited.

■ The inquiry does not end at this point. Even where (as here) there is a constitutional error, a reversal is required only if the reviewing court cannot conclude that the error was harmless beyond a reasonable doubt.[13] In applying the harmless error test, the factors we must consider include: (1) the importance of the testimony of the challenged witness; (2) whether his testimony was cumulative; and (3) the presence or absence of overwhelming evidence of guilt.[14]

Wilkinson was Wilson's co-conspirator and was the State's key witness against him. "Especially where the witness is an

8. *United States v. Chandler,* 326 F.3d 210, 220 (3rd Cir.2003) (quoting *Hoover v. State of Maryland,* 714 F.2d 301, 303 (4th Cir.1983)). The Circuits are split on the question of whether the Confrontation Clause requires that inquiry be allowed on cross-examination into the specific details of a plea agreement. *Id.* at 220–23.

9. *Id.* at 221 (quoting *Van Arsdall,* 475 U.S. at 680, 106 S.Ct. 1431) ("[I]f the trial court had not prohibited [the defendant] from cross-examining [the witnesses] with respect to the *magnitude* of the sentence reduction they believed they had earned, or would earn, through their testimony, the jury might have 'received a significantly different impression of [their] credibility.' ").

10. *See Hand v. State,* 354 A.2d 140, 141 (Del. 1976) ("Jurors should not be encouraged or permitted by the Court to allow the nature of the punishment, or the absence thereof, to

enter into their judgment.... [T]he jury should not be influenced by a consideration of the possible or probable disposition of the defendant....").

11. *Chandler,* 326 F.3d at 221 (quoting *Hoover,* 714 F.2d at 306).

12. *Id.* at 223 ("We conclude that, while the government had a valid interest in keeping from the jury information from which it might infer [the defendant's] prospective sentence were she to be convicted, that interest did not trump [the defendant's] entitlement under the Confrontation Clause.").

13. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

14. *Van Arsdall v. State,* 524 A.2d 3, 8 (Del. 1987) (applying the *Chapman* harmless error standard after finding a violation of the defendant's rights under the Confrontation Clause).

accomplice of the defendant or may have some other substantial reason to cooperate with the government, the defendant should be permitted wide latitude in the search for the witness' bias."[15] Wilkinson's testimony was the only evidence of motive for the robberies and was also the most persuasive identification of Wilson. Although Stanton also identified Wilson from the surveillance tapes, her identification was burdened by the fact that those tapes showed the robbers wearing bandanas, and that the police had informed Stanton—*before* she proceeded to viewing the tapes—that the suspects were connected to her apartment. For these reasons, Wilkinson's testimony as a coconspirator was critical to the State's case and it cannot be said that his testimony was merely cumulative. Because Wilkinson's credibility was an important factor at trial, additional information about his motive to testify could have decisively influenced the jury.[16] For these reasons, precluding Wilson from exploring Wilkinson's reduced sentence recommendation during cross-examination was not harmless error. We therefore on this claim reverse and remand for a new trial.

## II. *Prosecutor's Prejudicial Statement*

■ The second issue is whether the trial court erred by not declaring a mistrial based on an allegedly improper and unduly prejudicial statement by the prosecutor. Wilson claims that he was denied a fair and impartial trial when the prosecutor, during his opening statement, referred to evidence that was later ruled inadmissible. Because Wilson failed to raise this issue before the trial court, we review for plain error.[17] Plain errors are errors that are "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[18]

■ A prosecutor "represents all the people, including the defendant" and must "seek justice, not merely convictions."[19] In pursuing these goals, a prosecutor may not misrepresent evidence.[20] Here, in his opening statement the prosecutor referred to Rabari's positive identification of Wilson and Wilkinson during a photo line-up. The trial court later ruled that the photo identification was inadmissible. Wilson did not request a curative instruction or move for a mistrial, however.

In our view, the prosecutor's reference to the photo line-up identification does not rise to the level of plain error. At the time the improper reference was made, the evidence had not yet been ruled inadmissible. Except for that reference during the prosecutor's opening statement, there was only one other (unexpected) reference to the photo line-up identification. That latter reference came from Rabari, who, responding to a question from the State whether Rabari knew if the police had arrested anyone on the day of the first robbery, stated that an officer "showed [him a] picture." Defense counsel objected and a sidebar conference ensued.

---

15. *United States v. Tracey,* 675 F.2d 433, 438 (1st Cir.1982).

16. *United States v. Chandler,* 326 F.3d 210, 225 (3rd Cir.2003).

17. *Stewart v. State,* 2008 WL 482310, at *2 (Del.Supr).

18. *Id.* (quoting *Fleming v. State,* 1992 WL 135159, at *4 (Del.Supr.)).

19. *Hunter v. State,* 815 A.2d 730, 735 (Del. 2002) (citing *Bennett v. State,* 164 A.2d 442, 446 (Del.1960); *Sexton v. State,* 397 A.2d 540, 544 (Del.1979)).

20. *Id.* (citing *Morris v. State,* 795 A.2d 653 (Del.2002)).

Counsel for the State explained that his question was not a line-up question, that he expected Rabari's answer to be simply "no" and that he had not anticipated that Rabari would bring up the photo line-up in his response. Moreover, the references to the photo identification made by the State and by Rabari were cumulative because Wilson was also identified by Wilkinson (his coconspirator) and by Stanton. Therefore, the prosecutor's statement did not constitute plain error.

### III. Evidence of Other Bad Acts, Drug Use, and Hearsay

 The third issue is whether the Superior Court reversibly erred in admitting evidence of other bad acts, drug use, and hearsay. We review a trial court's evidentiary rulings for abuse of discretion. But, where (as here) there is no timely objection to the evidence, the review is for plain error.[21] A plain error is one "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[22]

Wilson first claims that references to his drug use should not have been admitted.

The fact that Wilson and Wilkinson robbed the Speedy Mart to get money to buy drugs, and that Wilkinson received half an OxyContin pill as "payment" for the second robbery, were admitted into evidence through the testimony of Wilkinson and Officer Morrissey, and Wilkinson's video-taped confession. Defense counsel did not object to Wilkinson's and Officer Morrissey's testimony about Wilson's drug use. Defense counsel objected only to the admission into evidence of Wilkinson's video-taped confession. The trial court admitted the videotape into evidence, with the segment referencing other robberies redacted. The segment referencing Wilson's drug use was not redacted, because the trial court held that "[i]t goes to motive and intent and reason for the robbery ... [and is] 404(b) appropriate."

D.R.E. 404(b) allows the admission of "other crimes, wrongs, or acts" for proving motive or intent[23] and in *Getz v. State*[24] this Court established guidelines for the admissibility of such evidence. Here, the Superior Court did not make a complete *Getz* analysis or give a limiting instruc-

---

**21.** *Page v. State*, 934 A.2d 891, 899 (Del.2007).

**22.** *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986) (citing *Dutton v. State*, 452 A.2d 127, 146 (Del.1982)).

**23.** D.R.E. 404(b) (Other crimes, wrongs or acts) provides: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

**24.** 538 A.2d 726, 734 (Del.1988). Those guidelines are:

(1) The evidence of other crimes must be material to an issue or ultimate fact in dispute in the case. If the State elects to present such evidence in its case-in-chief it must demonstrate the existence, or reasonable anticipation, of such a material issue. (2) The evidence of other crimes must be introduced for a purpose sanctioned by Rule 404(b) or any other purpose not inconsistent with the basic prohibition against evidence of bad character or criminal disposition. (3) The other crimes must be proved by evidence which is "plain, clear and conclusive." (4) The other crimes must not be too remote in time from the charged offense. (5) The Court must balance the probative value of such evidence against its unfairly prejudicial effect, as required by D.R.E. 403. (6) Because such evidence is admitted for a limited purpose, the jury should be instructed concerning the purpose for its admission as required by D.R.E. 105.

tion.[25] That was error, but it was not plain error, because the evidence of drug use shown on the videotape was merely repetitive of other testimony—not objected to—that the jury had already heard. Therefore, the error did not jeopardize the fairness and integrity of the trial.

Wilson's second claim of error is that Officer Morrissey should not have been allowed to testify about Wilkinson's admission that he and Wilson committed other robberies. As explained above, defense counsel did not object when the officer testified on that subject, but he did object to the admission into evidence of Wilkinson's videotaped confession, wherein Wilkinson mentioned the other robberies. Here again, the Superior Court did not make a complete *Getz* analysis under D.R.E. 404(b). Nor did it give a curative instruction, although any mention of the other robberies was redacted from the videotape before the tape was played to the jury. In view of the other evidence against Wilson, the brief mention of the other robberies—by Officer Morrissey, not by Wilkinson—did not rise to the level of plain error.

Wilson's third claim of error is that the two police officers who testified should not have been allowed to summarize statements made by Rabari and Wilkinson to the police, because that testimony was hearsay. Wilson's claim lacks merit because Rabari and Wilkinson's out-of-court statements were admissible under 11 *Del. C.* § 3507. That statute creates an exception to the hearsay rule in criminal cases where a declarant is present and subject to cross-examination.[26] Here, both Rabari and Wilkinson testified and were subject to cross-examination. Wilson has, therefore, failed to demonstrate plain error on this issue.

Wilson's final claim is that Wilkinson's videotaped confession to the police should not have been admitted. Because Wilson fails to state why the videotape was not properly admitted under 11 *Del. C.* § 3507 or why its admission constituted plain error, this claim must also be rejected.

### Conclusion

For the above reasons, we reverse and remand for a new trial because Wilson's right, under the Confrontation Clause, to cross-examine Wilkinson was unconstitutionally limited. With respect to the second and third claims of error, we affirm.

---

**25.** *See Holtzman v. State,* 1998 WL 666722, at *7 (Del.Supr.) (holding that, in the absence of a *Getz* analysis, followed by a specific ruling on admissibility and a limiting instruction, the defendant's bad acts, including alcoholism and drug treatment, were inadmissible and unfairly prejudicial character evidence).

**26.** 11 *Del. C.* § 3507 pertinently provides:
(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.