IN THE SUPREME COURT OF THE STATE OF DELAWARE

KENNETH APPIAH,                        §
                                       §    No. 30, 2020
 Defendant Below,                 §
 Appellant,                        §    Court Below: Superior Court
                                       §    of the State of Delaware
 v.                                §
                                       §    Cr. ID. No. N1808022193
STATE OF DELAWARE,                     §
                                       §
 Plaintiff Below,                 §
 Appellee.                         §

Submitted: November 18, 2020
Decided: December 22, 2020

Before **SEITZ**, Chief Justice; **VALIHURA**, and **MONTGOMERY-REEVES**, Justices.

## <u>ORDER</u>

This 22nd day of December 2020, having considered the parties' briefs and the record below, it appears to the Court that:

(1) On January 10, 2020, a Superior Court jury found Kenneth Appiah guilty of multiple felonies. A Superior Court judge sentenced him to 17 years in prison followed by probation. In this appeal from his convictions, he raises two main arguments - first, whether the Superior Court denied his constitutional right to confrontation and a meaningful opportunity to present a complete defense; and second, whether the Superior Court compromised his Sixth Amendment right to self-

representation by denying his requests for new counsel or self-representation. We find no merit to his arguments and affirm his convictions.

(2) Aruna Kanu, his girlfriend Aimee Kamara, and their son rented an apartment in Newark, Delaware. They sub-let a second bedroom in the apartment to Appiah. Appiah paid Kanu a security deposit and received two keys to the apartment. After living in the apartment for only two weeks of the agreed seven-month rental term, Appiah told Kanu that he accepted a job in Philadelphia and left the apartment. Kanu refused to return Appiah's security deposit after Appiah moved out. After Appiah left, Kanu rented the apartment's spare bedroom to Ricardo Campbell. Appiah never returned the two keys to the apartment. Appiah unsuccessfully tried to involve the police to get the security deposit back. Appiah also continued to text and email Kanu demanding his security deposit. In a final October 16, 2017 text, Appiah told Kanu "you need to stop playing with me."[1]

(3) On December 13, 2017, Kanu, Kamara, and their son were home at the apartment when a man in a black outfit and black mask entered the apartment using a key and pointed a gun at Kanu and gestured like he was demanding money. Kanu went into the bedroom, shut the door, and yelled for Kamara to call 911. While Kanu was on the floor, the man shot two times through the bedroom door. The

---

[1] App. to Opening Br. at A064 (Trial Tr. at 26).

gunshots did not hit anyone but damaged the child's crib. At trial, Kanu testified that the man was Appiah.[2]

(4) Appiah fled the apartment before police arrived. Police collected two spent .32 caliber shell casings from outside the bedroom door and projectiles from the baby's crib and the wall. An officer's body camera from the night of the incident showed an officer going into Campbell's room, saying that the room smelled like drugs, and pointing out a drug scale and drug packaging.

(5) Police interviewed Appiah that night but did not arrest him. Appiah was wearing black clothes when the police conducted the interview. Two days later, police interviewed Appiah again. He admitted that he owned a .32 caliber handgun. Police arrested Appiah, seized the gun, and had the gun tested. A forensics expert testified that the shell casings from the apartment were consistent with having come from Appiah's gun, though the examiner could neither identify nor eliminate the projectiles as having been fired from Appiah's gun.

(6) The State charged Appiah with Home Invasion, Burglary in the First Degree, five counts of Possession of a Firearm during the Commission of a Felony, Attempted Robbery in the First Degree, three counts of Reckless Endangering in the First Degree, and a misdemeanor count of Criminal Mischief. After a three-day trial, a Superior Court jury convicted Appiah of all charges, except Home Invasion and

---

[2] *Id.* at A066 (Trial Tr. at 34).

3

instead of Attempted Robbery in the First Degree, of the lesser-included offense of Aggravated Menacing. The Superior Court judge sentenced Appiah to seventeen years at Level V, followed by probation.

(7) On appeal, Appiah raises three claims of error relating to the Superior Court's denial of his request to inquire into drug paraphernalia found in Campbell's room—(a) the evidence could be used under D.R.E. 616 to show bias; (b) the evidence could be used under D.R.E. 404(b) to rebut the State's motive argument; and (c) precluding its use violated the Confrontation Clause and Appiah's Due Process right to a fair opportunity to defend against the State's accusations. He also claims that his Sixth Amendment rights were violated when the Court refused to appoint new counsel or allow him to represent himself. We review the Superior Court's evidentiary rulings for abuse of discretion.[3] We review alleged constitutional violations related to the trial court's evidentiary ruling *de novo*.[4]

(8) Addressing first the Superior Court's refusal to let defense counsel cross-examine a witness about drug paraphernalia found in the apartment, the State called Campbell to testify about his lack of keys to the apartment and his need to use a set of keys Kanu left under the floor mat in Kanu's car. The State used the testimony to show that Appiah kept the keys to the apartment and used the keys to

---

[3] *Allen v. State*, 878 A.2d 447, 450 (Del. 2005).
[4] *Smith v. State*, 913 A.2d 1197, 1233 (Del. 2006).

4

gain access to the apartment for the robbery. On cross-examination, Appiah's counsel asked Campbell about a drug scale in his room. The State objected, and the court called for a sidebar.

(9) Appiah's counsel explained that he wanted to use the evidence to establish that other people involved in drug transactions might have been coming and going from the apartment using Campbell's key. This proved, according to Appiah's counsel, that someone other than Appiah could have entered the apartment on the night in question. The trial judge told Appiah's counsel that she might allow her to ask about the drug evidence if counsel could lay a foundation about Campbell or Kanu loaning the apartment keys to others. After the sidebar, the court instructed the jury to disregard Appiah's counsel's question to Campbell about the drug scale.[5] At the end of that day of trial, Appiah's counsel raised the issue again and the court ruled that she was not satisfied that it was admissible under D.R.E. 403 because it was too speculative.[6]

(10) Appiah argues that the drug paraphernalia evidence was relevant to Campbell's bias as a witness because, according to Appiah, the evidence "provided a reasonable basis to suggest that Kanu, Campbell and Kamara had a motive to tailor

---

[5] App. to Opening Br. at A051 (Trial Tr. at 86-87).
[6] *Id.* at A059 (Trial Tr, at 130) ("[The Court]: At this point, I'm not satisfied it's admissible under [Rule] 403. I'm just not. I think it's – too much of a stretch.").

5

their testimony to curry favor with the prosecution in an attempt to avoid criminal charges."[7] It is arguable whether Appiah made this argument below and thus we should review for plain error. Regardless, even if we review for abuse of discretion, the court did not err.

(11) D.R.E. 616 provides that "[a] witness's credibility may be attacked with evidence of the witness's bias, prejudice or interest for or against any party to the case." This rule is not, however, without limits. The impeachment evidence must be relevant to bias and not cause unfair prejudice, confusion, or undue delay.[8] Here, the trial judge gave Appiah the opportunity to lay a foundation that Campbell was allowing others to use his key to enter the apartment and make drug deals. The evidence was not forthcoming. The court eventually found that the speculative use of the evidence was "very prejudicial and takes away from the main reasons [they were at trial]."[9] The Superior Court did not abuse its discretion when it weighed the speculative and marginal relevance of the evidence against the prejudice to the State of allowing cross-examination on—at best—a tangential issue.

(12) Second, Appiah argues that the trial court abused its discretion when it denied admission of the drug evidence under D.R.E. 404(b) to rebut the State's motive evidence that Appiah was after his security deposit. D.R.E. 404(b) provides

---

[7] Opening Br. at 17.
[8] *Wilkinson v. State*, 979 A.2d 1111, 2009 WL 2917800, at *2 (Del. 2009) (TABLE).
[9] App. to Opening Br. at A051 (Trial Tr. at 84).

that evidence of "other crimes, wrongs or acts" can be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

(13) When a defendant seeks to use evidence under D.R.E. 404(b), it is called "reverse 404(b) evidence" because evidence is typically introduced under Rule 404(b) against the defendant.[10] In a reverse 404(b) instance, the trial judge examines "(1) whether the evidence is being offered for a purpose permitted by Rule 404(b); (2) whether the evidence is relevant under Rule 402; and (3) any argument by a party that the probative value of the evidence is substantially outweighed by potential prejudice, undue delay, or confusion of the issue under Rule 403."[11] As has already been shown, the court fairly concluded that the probative value was outweighed by confusion of the issues, undue delay, and unfair prejudice.

(14) The defense relies on *Norwood v. State*.[12] In *Norwood,* this Court found that evidence of a third party's involvement in an almost identical crime to the one at issue was relevant to the defense's theory of misidentification. This court held that the evidence was admissible because the State did not articulate any prejudice, the evidence would not cause undue delay, and the jury would not be confused about

---

[10] *See Norwood v. State*, 95 A.3d 588, 596 (Del. 2014).
[11] *Id.* at 598.
[12] 95 A.3d 588 (Del. 2014).

7

the main issue in the case–the identity of a third robber.[13]  Here, unlike *Norwood*, the State showed that the drug paraphernalia evidence was speculative and unfairly prejudicial to the State's case.[14]  The court was also concerned about starting a mini-trial about the drug evidence, which would confuse the jury and waste time.[15]  The court did not abuse it's discretion by excluding the evidence.

(15)   Appiah also claims that even if this court finds no reversible error in denying the opportunity for cross examination under D.R.E. 616 or D.R.E. 404(b), this Court should nonetheless find that, cumulatively, the denial of his use of the evidence amounted to a violation of the Confrontation Clause and Appiah's Due Process right to a fair opportunity to defend against the State's accusations.

(16)   The Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him.[16]  An essential component of this right is the defendant's right to conduct adequate cross-examination of adverse witnesses.  A trial court's discretion to limit the scope of cross-examination is guided by our decisions in *Snowden v. State* and *Weber v. State*.[17]  In those cases, the court looked to "(1) whether the testimony of the witness being impeached is crucial; (2) the logical relevance of the specific impeachment evidence; (3) the danger of unfair

---

[13] *Id.* at 599.
[14] App. to Opening Br. at A050 (Trial Tr. at 83).
[15] *Id.* at A051 (Trial Tr. at 84).
[16] U.S. Const. amend. VI.
[17] *Williams v. State*, 141 A.3d 1019, 1033 (Del. 2016).

prejudice, confusion of the issues, and undue delay; and (4) whether the evidence is cumulative."[18] The question boils down to "whether the jury had in its possession sufficient information to appraise the biases, credibility, or motives of the witness."[19]

(17) Even if the reviewing court finds that the trial court violated the defendant's constitutional right to confrontation, however, "a reversal is required only if the reviewing court cannot conclude that the error was harmless beyond a reasonable doubt."[20] Whether an error is harmless depends on "(1) the importance of the testimony of the challenged witness; (2) whether his [or her] testimony was cumulative; and (3) the presence or absence of overwhelming evidence of guilt."[21] The ultimate question for the reviewing court is whether the error may have affected the outcome.[22]

(18) We have already found that the trial court did not abuse its discretion in limiting the cross-examination of a State witness about drug paraphernalia evidence because the probative value of the evidence did not outweigh the prejudice and risk of confusing the jury. But, even if the trial court erred, it is highly doubtful that the drug paraphernalia evidence would have affected the jury's decision. The

---

[18] *Id.*
[19] *Id.* at 1034 (citing *Weber v. State*, 457 A.2d 674, 682 (Del. 1983)) (internal quotation marks omitted).
[20] *Wilson v. State*, 950 A.2d 634, 639 (Del. 2008) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967)).
[21] *Williams,* 141 A.3d at 1035 (quoting *Wilson*, 950 A.2d at 639, citing *Van Arsdall v. State*, 524 A.2d 3, 8 (Del. 1987)).
[22] *Id.* (citing *Van Arsdall*, 524 A.2d at 11).

evidence was speculative and minor in importance to other evidence of guilt such as the .32 caliber weapon, shell casings, Appiah's access to keys to the apartment, and Kanu's identification of Appiah as the intruder.

(19) Finally, Appiah argues that his conviction should be reversed because the Superior Court denied his request for new counsel and denied his Sixth Amendment right to represent himself. The right to proceed *pro se* is reviewed *de novo*.[23] Because Appiah made his request to change counsel just before trial and during trial, under this Court's decision in *Briscoe v. State,* the trial court must inquire whether the reasons offered by the defendant to discharge his attorney constitute good cause to justify a continuance of the trial.[24] If the court does not find good cause, the defendant must choose either to continue with his existing counsel or proceed to trial representing himself.[25] If the defendant decides to proceed *pro se*, the trial court must engage in a further colloquy to ensure that the defendant understands the consequences of the decision.[26]

(20) Here, different Superior Court judges made the necessary inquiry into whether new counsel should be appointed along with the timing of the request. Appiah was able to express his reasons for wanting new counsel. Appiah stated that: (a) he wanted defense counsel to get a medical report about Kanu being shot even

---

[23] *Stigars v. State*, 674 A.2d 477, 479 (Del. 1996).
[24] *Briscoe v. State*, 606 A.2d 103, 107 (Del. 1992).
[25] *Id.*
[26] *Id.*

10

though it was undisputed that Kanu falsely told the 911 operator he had been shot; (b) defense counsel supposedly contacted Appiah's wife without his permission and discussed the case; (c) he questioned whether defense counsel understood the ballistics report; (d) defense counsel supposedly spoke to him in a demeaning manner; and (e) he doubted her abilities and argued when they were together.[27] Some tension is unavoidable between counsel and client. Without facts showing a complete breakdown in communication with counsel, a conflict of interest, or an irreconcilable interpersonal conflict, the Superior Court did not abuse its discretion before or during trial when it denied Appiah's request for new counsel.[28]

(21) Appiah's self-representation claim is also without merit. Before Appiah is entitled to a colloquy with the court about representing himself, he must make a timely request to represent himself and must do so clearly and unequivocally.[29] Before trial, the Superior Court asked Appiah if he wanted to represent himself, and Appiah responded that he did not.[30] During trial, the State had already presented most of its case, and Appiah's complaints were not new. The Superior Court was well within its discretion to deny the request when the same

---

[27] App. to Opening Br. at A022–28 (Tr. of Case Review Colloquy at 6–12).
[28] *United States v. Welty*, 674 F.2d 185, 188 (3d Cir. 1982)).
[29] *Buhl v. Cooksey*, 233 F.3d 783, 792 (3d Cir. 2000).
[30] App. to Opening Br. at A024 (Tr. of Case Review Colloquy at 8) ("[The Court]: Mr. Appiah, you don't get to choose your attorney. So, is your proposal, then, to represent yourself? [The defendant]: I can't represent myself.").

request was thoroughly considered a week before trial. Granting Appiah's request on the second day of trial would have delayed the trial and caused prejudice to the State, trial witnesses, and the court in a trial that was fully underway.[31]

NOW, THEREFORE, it is hereby ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Chief Justice

---

[31] On March 4, 2019, Judge Scott met with Appiah, his attorney, and the prosecutor and thoroughly reviewed Appiah's request for new counsel. President Judge Jurden also held an office conference with Appiah's counsel and the prosecutor to discuss what Appiah said to Judge Scott about terminating his trial counsel. President Judge Jurden found that Appiah's counsel had acted appropriately in the circumstances. App. to Opening Br. at A037 (Office Conference Tr. at 8).