IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| THOMAS N. VAN VLIET, | § | |
| | § | No. 662, 2015 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| v. | § | |
| | § | Superior Court of the |
| STATE OF DELAWARE, | § | State of Delaware |
| | § | |
| | § | Cr. I.D. No. 1406008729 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: August 24, 2016
Decided: September 16, 2016

Before **STRINE**, Chief Justice; **HOLLAND** and **VALIHURA**, Justices.

## O R D E R

This 16th day of September 2016, upon consideration of the briefs of the parties and the record below, it appears to the Court that:

(1)  The appellant, Thomas N. Van Vliet ("Van Vliet"), filed this appeal from the Superior Court's November 23, 2015 Sentence Order.

(2)  On September 2, 2014, the State of Delaware filed an indictment against Van Vliet.  The charges included one count of Knowingly Operating or Attempting to Operate a Clandestine Laboratory, one count of Drug Dealing: Manufacturing Methamphetamine, one count of Possession of a Firearm by a Person Prohibited ("PFBPP"), one count of Possession of Drug Paraphernalia, and one count of Conspiracy Second Degree.

(3)    The case was tried before a jury from August 24, 2015 through August 31, 2015.  On August 27, 2015, after the close of the State's evidence, the Superior Court dismissed the Conspiracy Second Degree charge.  Van Vliet had been jointly indicted with Joshua Wilson ("Wilson"), who subsequently pled guilty to drug dealing and to conspiracy third degree.[1]  The jury ultimately found Van Vliet not guilty on the charges of Operating or Attempting to Operate Clandestine Laboratory and Drug Dealing: Manufacturing Methamphetamine.  The jury did find Van Vliet guilty of PFBPP and Possession of Drug Paraphernalia.

(4)    Prior to sentencing, Van Vliet filed a Motion for Judgment of Acquittal or in the Alternative Motion for a New Trial (the "Motion for Judgment of Acquittal").  He argued that the jury's conviction of the PFBPP charge was inconsistent with the acquittal of the drug charges.  In addition, Van Vliet asserted in his motion that because he was not separately charged with the misdemeanor offense of possession of methamphetamine, the lack of a guilty verdict as to a possession charge prohibited conviction of the compound weapon offense.[2]

---

[1] A56; A71.  Count 3 of the indictment alleged Conspiracy Second Degree.  The Superior Court ruled that it was "not able to conclude . . . that a rational trier of fact . . . could conclude that there was a conspiracy with Mr. Wilson, that is, a conspiracy between Mr. Thomas Van Vliet and Josh B. Wilson, as alleged in Count 3 of the indictment."  B44 (Tr. D-32:1-5).

[2] The Indictment concerning the PFBPP charge states:

> THOMAS N. VAN VLIET, on or about the 11th day of June, 2014, in the County of Kent, State of Delaware, did knowingly possess or control a handgun, a deadly weapon as defined by Title 11, Section 22 of the Delaware Code, and, at the same time, did possess methamphetamine, a controlled substance, in violation of Title 16, Section 4763 of the Delaware Code.

See Op. Br. 9 (emphasis removed).

(5)     On appeal, Van Vliet raises two issues.  *First,* he contends that the jury's conviction of the PFBPP charge is inconsistent with his acquittal of the drug charges. *Second*, Van Vliet argues that any rule of evidence prohibiting him from admitting his codefendant's guilty plea as part of his defense must be subordinate to his constitutional right to present a defense, and that he was denied due process.  We reject these contentions and AFFIRM his conviction.

## FACTUAL BACKGROUND

(6)     On the morning of June 11, 2014, Sue Lynn Durk ("Durk")[3] took her boyfriend to 1658 Woodyard Road in Harrington, Delaware so that he could purchase crystal meth or methamphetamine.  The parents of Cynthia Van Vliet ("Cynthia"), Van Vliet's wife, owned the property.  Cynthia and Van Vliet lived at the Woodyard Road residence with their daughter.  At the time, Wilson was renting a room in the garage, and a friend of Van Vliet's, Josh Sutcliffe, was staying at the home and paying rent.

(7)     After her arrival on June 11, 2014, Durk saw Van Vliet inside the house. Van Vliet pointed a gun at her and informed her that she could not leave.  Later, Durk observed Van Vliet fire the gun in the air.

(8)     At approximately 6:30 a.m. on June 11, 2014, the Delaware State Police executed a search warrant at the Woodyard Road residence.  Because the police suspected that the home was a clandestine laboratory for the manufacture of methamphetamine, approximately sixteen police officers from all three counties

---

[3] In the record and briefing before this Court, Durk's name appears both as "Suelynn" and "Sue Lynn."

participated in the warrant's execution. The police were assisted by members of the Delaware Department of Natural Resources and Environment Control ("DNREC") Emergency Response Team and the Little Creek Fire Department. Individuals from DNREC and the Fire Department were present due to the risk of chemical contamination and flash fires resulting from chemical reactions.

(9) Upon their arrival at the Woodyard Road residence, the police detained multiple suspects in the vicinity of the home's garage. The police recovered methamphetamine and two lithium batteries from Wilson. Inside the house, the police located methamphetamine on the living room coffee table and in a black container in the master bedroom closet. A vial seized from the living room contained a cut straw with methamphetamine residue. Further, one of the items recovered from the house contained cocaine. None of the items seized was processed for fingerprints.

(10) State Police Sergeant Lance Skinner ("Sergeant Skinner"), the head of the Kent County Drug Unit, testified that a clandestine one-pot methamphetamine lab was being operated at 1658 Woodyard Road when the June 11, 2014 search warrant was executed. James W. Bethard, the chief of the DNREC Emergency Response Team at the time, similarly testified that methamphetamine was being manufactured at the residence.

(11) Sergeant Skinner described the various ingredients used to manufacture methamphetamine. Skinner was present for the June 11 search, and he testified that several of the ingredients used to manufacture methamphetamine were discovered at the Woodyard Road property. Because so many of the components for the operation of a clandestine lab were present when the search warrant was executed, it was Sergeant

4

Skinner's opinion that a methamphetamine lab was being operated at 1658 Woodyard Road.[4]

(12)   In the master bedroom, the police located a nightstand containing a handgun loaded with five .38 caliber rounds and paperwork addressed to Van Vliet. Also in the master bedroom was a black container with a powdery substance determined to be methamphetamine.

(13)   Testifying in his own defense at trial, Van Vliet admitted to possessing the revolver found in the master bedroom, but he claimed that the weapon was owned by someone else. Van Vliet said the handgun should have been in the living room where he was recovering from a motorcycle accident the preceding month.[5] Van Vliet said Joshua Wilson was living in the garage. Van Vliet said he knew nothing about manufacturing methamphetamine and specifically denied any knowledge of or involvement in illegal drug activity on the property. The State's witness, Durk, testified that she never saw Van Vliet conduct an exchange of methamphetamine or money.

### STANDARD OF REVIEW

(14)   The question of whether the jury's guilty verdict on the PFBPP charge is inconsistent with Van Vliet's acquittal of the drug dealing charge presents a question of law subject to *de novo* review.[6]

---

[4] DNREC Officer Bethard also described the various ways to manufacture methamphetamine. On the basis of the items seized during the June 11 search, Bethard also thought that a methamphetamine lab was being operated at the Van Vliets' home.

[5] Van Vliet testified that he had been sleeping in the recliner in the living room, rather than a bed, due to his back injuries and breathing difficulties. A32.

[6] *See Priest v. State*, 879 A.2d 575, 580 (Del. 2005) (citation omitted).

(15)   As to the issue of the trial court's refusal to admit into evidence the docket sheet showing Van Vliet's codefendant's guilty plea, a trial judge's evidentiary rulings are reviewed on appeal for abuse of discretion.[7] Claims of constitutional violations are subject to *de novo* review.[8]

## ANALYSIS

### A.   *Van Vliet's Conviction of the Firearm Charge Is Not Inconsistent with His Acquittal of the Drug Charges*

(16)   On appeal, Van Vliet contends that the jury's conviction of him on the charge of possessing a deadly weapon while at the same time possessing a controlled substance is inconsistent with his acquittal on the charges of operating a clandestine drug lab and drug dealing by manufacturing methamphetamine.

(17)   In response to Van Vliet's claim that the verdicts are inconsistent, the State contends that it was not inconsistent for the jury to acquit Van Vliet of the drug charges and convict him of possessing a deadly weapon while possessing a controlled substance as prohibited by 11 *Del. C.* § 1448(a)(9).  The State argues that a rational trier of fact, viewing the evidence in the light most favorable to the State, could have concluded that Van Vliet possessed the methamphetamine found inside his home, even if the jury had not been convinced beyond a reasonable doubt that Van Vliet was either operating a clandestine drug lab or was otherwise involved in the manufacture of methamphetamine.

(18)   We agree with the State that there is no inconsistency in the verdict.  The compound weapon offense at issue concerned conduct prohibited by 11 *Del. C.*

---

[7] *Jones v. State*, 940 A.2d 1, 9 (Del. 2007) (citations omitted).
[8] *Johnson v. State*, 878 A.2d 422, 427 (Del. 2005) (citation omitted).

§ 1448(a)(9), which prohibits possession or control of a deadly weapon by:

> [a]ny person, if the deadly weapon is . . . a handgun, who, at the same time, possesses a controlled substance in violation of § 4763, or § 4764 of Title 16.[9]

(19)   The jury was not asked to make a determination on methamphetamine possession in deciding the two counts dealing with operating a clandestine lab and manufacturing (as distinct from possessing) methamphetamine.   An acquittal of manufacturing-related charges does not render the jury's verdict inconsistent.  Therefore, we conclude that the Superior Court did not err in denying Van Vliet's Motion for Judgment of Acquittal.

(20)   Although application of the rule of lenity is unnecessary here in view of our conclusion that the verdicts are not inconsistent, Van Vliet's firearm conviction could alternatively be upheld as an exercise of jury lenity, provided the evidence was sufficient to convict him of simultaneously possessing a firearm and a controlled substance.[10]  We agree with the Superior Court's conclusion that "there was sufficient evidence for the jury to find that [Van Vliet] possessed a handgun, and possessed methamphetamine."[11] A rational trier of fact could have concluded that the methamphetamine found in the master bedroom and on the living room coffee table belonged to Van Vliet.  When Van Vliet testified, he admitted to sleeping in the living room chair next to the coffee table

---

[9] 11 *Del. C.* § 1448(a)(9) (effective Jan. 30, 2014) (amended July 4, 2014).

[10] *See King v. State*, 2015 WL 5168249, at *2 (Del. Aug. 26, 2015) (citing *Tilden v. State*, 513 A.2d 1302, 1306-07 (Del. 1986)) ("Under the rule of jury lenity, this Court may uphold a conviction that is inconsistent with another jury verdict if there is legally sufficient evidence to justify the conviction.").

[11] *State v. Van Vliet*, 2015 WL 5554058, at *2 (Del. Super. Sept. 18, 2015).

containing the methamphetamine.  When the search warrant was executed, he was seated in that chair.  Similarly, a rational trier of fact could have concluded beyond a reasonable doubt that Van Vliet possessed the loaded revolver found in the master bedroom nightstand, in proximity to papers addressed to him.  At trial, he admitted that he possessed the handgun but claimed it was owned by a third party.  Thus, viewing the evidence in the light most favorable to the State, a rational juror could have found Van Vliet guilty beyond a reasonable doubt of the compound weapon offense.  Accordingly, we reject Van Vliet's claim of error.

## B.    There Was No Abuse of Discretion in Declining to Admit the Codefendant's Guilty Plea

(21)    On appeal, Van Vliet contends that he was denied due process of law in view of the trial court's refusal to admit the docket sheet from the State's prosecution of Wilson, the non-testifying former codefendant.

(22)    During the State's case-in-chief, defense counsel attempted to enter into evidence the docket sheet to show that Wilson "pled guilty to the drug dealing and the conspiracy."[12]  The Superior Court asked counsel to review *Allen v. State*[13] and later addressed Van Vliet's request during the fourth day of trial.  Defense counsel reiterated that he wished to submit a docket, and not Wilson's plea agreement.[14]

(23)    During the fourth day of trial, the trial court heard argument and considered

---

[12] A49 (Tr. C-142:17-18).    Defense counsel asserted that the docket sheet was a self-authenticating document under Delaware Rule of Evidence 803(8).

[13] 878 A.2d 447 (Del. 2005).

[14] The version of Wilson's docket sheet in the record before us (which we assume is the document Van Vliet wished to have admitted) indicates only that Wilson "Pled Guilty."  There is no reference to the charges that are the subject of the plea or to the conspiracy charge in particular.

8

a memorandum prepared by Van Vliet's counsel. The court asked how the docket sheet would make it more likely that Van Vliet was not guilty. Defense counsel responded that there was evidence that the methamphetamine lab "could have been created by one person . . . ."[15] Counsel argued further that "the fact that the person does plead guilty to the offenses charged is presenting a defense on behalf of Mr. Van Vliet that supports the argument that he did not know what was going on that day."[16]

(24)    Van Vliet argued that the introduction of Wilson's guilty plea would have been consistent with other evidence introduced at trial, including the lithium batteries and methamphetamine that were found in Wilson's pants pockets and the numerous individuals who had access to the residence.

(25)    The State opposed entry of Wilson's docket sheet and responded that Van Vliet and Wilson were jointly indicted and that "if the docket comes in, the State submits that the indictment on those two charges should come in as well to complete the evidence for the purpose that it's being offered."[17] The State also argued that *Allen* makes clear that the docket cannot be used as substantive evidence.

(26)    The Superior Court commented that that "the *Allen* case is clear . . . absent testimony of the individual involved or the person appearing on the stand, that it's

---

[15] A57 (Tr. D-35:2-5).

[16] A57 (Tr. D-35:13-16). Defense counsel argued further that if the State wanted to proffer the original guilty plea agreement, "then they are supposed to give 14 days['] notice before they submit that into evidence under 803(b), and they haven't done that obviously . . . . The docket is just the bare essentials." A51 (Tr. C-144:18-22).

[17] A50 (Tr. C-143:18-21). Defense counsel also stated that he intended to call Wilson to testify at trial but that the State had requested that Wilson's sentencing be continued until after Van Vliet's trial, and that Wilson had therefore refused to testify.

generally not admissible for evidence of a conviction of a codefendant."[18]

(27) The Superior Court also observed that introduction of Wilson's guilty plea would not be helpful to the defense since, if it had been admitted into evidence, the jury "would have had to have been given . . . what that conspiracy charge involved."[19] Namely, as the Superior Court explained, "[i]t involved a guilty plea by Mr. Wilson to conspiracy with Mr. Van Vliet and it would not be proper -- one, it wouldn't be proper just to have an open-ended conspiracy charge out there with no explanation to the jury as to who . . . Mr. Wilson said he conspired with."[20] On the other hand, the Superior Court observed that "[i]t wouldn't be proper for the State to be able to, absent having Mr. Wilson's testimony, to be able to put that into evidence and to argue that that means that Mr. Van Vliet's guilty. They wouldn't be allowed to do that."[21]

(28) After hearing the court's comments, defense counsel stated that "it could be argued that the submission of the docket would satisfy the jury's curiosity as to what happened to the codefendant in this matter because the indictment in and of itself, the original indictment, has both parties present."[22] The trial court responded that the jury had not seen the docket "and [would] not see it because the only count that addressed Mr. Wilson is no longer part of the case."[23] The Superior Court stated that satisfying the curiosity of the jury would not meet the threshold for admissibility.

---

[18] A62 (Tr. D-40:4-10).
[19] A71 (Tr. D-49:6-8).
[20] A71 (Tr. D-49:8-13).
[21] A71 (Tr. D-49:13-17).
[22] A72 (Tr. D-50:4-8).
[23] A72 (Tr. D-50:9-11).

(29) After hearing argument from both Van Vliet and the State, the Superior Court summarized its ruling as follows:

> So the [c]ourt's going to rule based on the reasons that it's articulated and based on the *Allen versus State* case and the fact that the defendant -- the codefendant, Wilson, or the previous codefendant Wilson, did not testify in this case and had no involvement in the case, that it's -- record of his conviction through a docket sheet is not -- is not warranted. Again, that's based on relevance, also based on Delaware Rule of Evidence 403 which in this case any arguable relevance in the case would be substantially outweighed by the risk of confusion and -- mostly the risk of confusion, I think, for the jury in this case.[24]

(30) In response to Van Vliet's claim of denial of due process, the State urges on appeal that the trial court did not abuse its discretion in declining to admit the docket sheet showing that Wilson pled guilty to drug dealing and conspiracy. It argues that "[t]he trial judge correctly applied the restriction of *Allen v. State* in this case."[25]

(31) Van Vliet relies on *Allen*, as well as *Norwood v. State*[26] and *Chambers v. Mississippi*.[27] In *Allen*, we held that the use of a guilty plea of a codefendant by the prosecutor for the purpose of establishing the guilt of the defendant is improper.[28] But here, the *defendant* seeks introduction of the guilty plea as evidence that the crime was committed by the codefendant. Our decision in *Norwood* involved a defendant's attempt to use evidence of prior bad acts of a third party. We observed in *Norwood* that "a defendant can also seek to introduce evidence of the prior bad acts of some third party if

[24] A73 (Tr. D-51:4-15).
[25] Ans. Br. 17 (citation omitted).
[26] 95 A.3d 588 (Del. 2014).
[27] 410 U.S. 284 (1973).
[28] *Allen*, 878 A.2d at 450.

11

that evidence tends to negate the defendant's guilt of the crime charged."[29] "Such evidence is most commonly introduced by a defendant to show that someone else committed a similar crime or series of crimes, implying that he or she also must have committed the crime in question."[30] In contrast with typical "other crimes" evidence, "which is used to incriminate defendants, 'reverse 404(b)' evidence is utilized to exonerate defendants."[31] Thus, "[i]ntroducing reverse 404(b) evidence to prove identity is a proper purpose."[32] Further, "when the defendant himself is seeking to introduce the evidence, prejudice to the defendant is not an issue . . . ."[33] Because Van Vliet seeks introduction of evidence of a third party, our decision in *Norwood* is more on point than *Allen*.

(32) In *Norwood*, this Court reversed the Superior Court's decision to exclude evidence of prior crimes of a third party. In that "reverse 404(b)" case,[34] the defendant was charged with the robbery of a Family Dollar store in Dover, Delaware. The

---

[29] *Norwood*, 95 A.3d at 596 (footnote omitted).

[30] *Id.* (quoting *United States v. Williams*, 458 F.3d 312, 315-16 (3d Cir. 2006)) (internal quotation marks omitted). This type of evidence is sometimes colloquially referred to as "reverse 404(b) evidence." *Id.* (citations omitted).

[31] *Id.* (quoting *United States v. Stevens*, 935 F.2d 1380, 1402 (3d Cir. 1991)) (internal quotation marks omitted).

[32] *Id.* (citing D.R.E. 404(b) (providing that "[e]vidence of other crimes, wrongs or acts . . . may, however, be admissible for other purposes, such as . . . *identity* . . . ." (emphasis and alteration in *Norwood*))).

[33] *Id.*

[34] Delaware Rule of Evidence 404(b) provides that:

> [e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Del. R. Evid. 404(b).

identities of two of the perpetrators were not in dispute. Norwood was allegedly the third. He identified another man as the third perpetrator, however. Norwood attempted to introduce evidence that the individual he identified and the other two perpetrators had also robbed the same Family Dollar store weeks earlier and had attempted to rob it again the week prior to the robbery for which he was charged.

(33) We held that "[t]he Superior Court's decision to exclude the evidence was an abuse of discretion, given the substantial similarities between the prior crimes" and the robbery the defendant allegedly committed.[35] We reasoned that, "[b]ecause Norwood offered the evidence for the proper purpose of establishing the identity of the third man, who Norwood claimed was the actual perpetrator, the evidence was admissible under Delaware Rule of Evidence 404(b) and relevant under Rule 402."[36] We also concluded that "any potential prejudice caused by the evidence did not substantially outweigh its probative value under Rule 403."[37] We observed that "the evidence Norwood sought to introduce posed no risk of prejudice, delay, or confusion of the issue that substantially outweighed the evidence's obvious relevance."[38] The State, in that case, did not argue that the error was harmless.

(34) In *Norwood*, Norwood's only defense at trial was misidentification. The identity of the third perpetrator was material. Also, given the similarities between the crimes, the evidence concerning the other crimes made it more probable that the

---

[35] *Norwood*, 95 A.3d at 590.
[36] *Id.*
[37] *Id.*
[38] *Id.*

individual Norwood identified, instead of Norwood himself, was the third perpetrator.

(35)    We observed further in *Norwood* that "[t]he standard to apply for the admissibility of reverse 404(b) evidence [was] a question of first impression for this Court."[39]  We held that "in a situation involving so-called reverse 404(b) evidence, the trial judge should examine:  (1) whether the evidence is being offered for a purpose permitted by Rule 404(b); (2) whether the evidence is relevant under Rule 402; and (3) any argument by a party that the probative value of the evidence is substantially outweighed by potential prejudice, undue delay, or confusion of the issue under Rule 403."[40]

(36)    We apply this framework to the Rule 404(b) evidence Van Vliet sought to admit at trial.  The evidence was offered for a purpose permitted by Rule 404(b), namely, establishing the identity of the perpetrator(s).  But *Norwood* is distinguishable.  Here, by contrast, the fact that Wilson pled guilty to drug charges and to conspiracy does not necessarily make it more likely that Van Vliet was not involved.  In fact, as the State pointed out, Wilson pled guilty to conspiring (third degree) with Van Vliet.

(37)    Further, to introduce the docket sheet but omit information that the charge involved allegations that Wilson conspired with Van Vliet, as Van Vliet advocated, would have presented an incomplete description of the charge and the plea agreement to the jury.  Thus, under the third prong of the *Norwood* test, presentation to the jury of the docket sheet which shows only the bare fact that Wilson pled guilty—omitting any

---

[39] *Id.* at 597.
[40] *Id.* at 598.

reference to Van Vliet—may have misled the jury and resulted in prejudice to the State.[41]

(38)   Accordingly, we conclude that the trial court did not abuse its discretion or violate Van Vliet's constitutional rights in refusing to admit Wilson's docket sheet into evidence.  Van Vliet testified that Wilson lived in his garage.  The State police found evidence that a methamphetamine lab was being operated in the garage adjacent to the residence.  Police found methamphetamine in both Van Vliet's living room and master bedroom.  Wilson's guilt of drug and conspiracy charges, indicated by his plea, does not preclude Van Vliet's involvement in the same criminal conduct, particularly considering that the contraband substance was found inside his residence, where he was apprehended.

(39)   Van Vliet's reliance on *Chambers*[42] is also unhelpful to him.  There, a third person, McDonald, on separate occasions, verbally confessed to three friends that he had committed the murder with which the petitioner was charged.  McDonald's confessions bore substantial assurances of trustworthiness, despite the fact that he later repudiated a written confession.  Pursuant to the hearsay rule and Mississippi's party "voucher" rule, the trial court excluded the testimony of the three friends to whom verbal confessions had been made and upheld the State's refusal to permit the petitioner to cross-examine McDonald after the petitioner called McDonald as a witness.  The United States Supreme Court held that the petitioner had been deprived of a fair trial.[43]

---

[41] *See Williams*, 458 F.3d at 319 (citing *United States v. Lucas*, 357 F.3d 599, 606 & 606 n.2 (6th Cir. 2004)) (suggesting that "unfair prejudice is viewed not only from the defendant's perspective").

[42] 410 U.S. 284 (1973).

[43] At trial, after the State failed to call McDonald to testify, the petitioner called McDonald, laid a predicate for the introduction of his sworn out-of-court confession, and had it admitted into

(40)   The *Chambers* Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanically to defeat the ends of justice."[44]  In so holding, the Supreme Court reiterated the important principle that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense."[45]

(41)   The facts in *Chambers*, however, also differ in important ways from those presented here.  For example, the Supreme Court, in addressing whether McDonald was an "adverse" witness, observed that "[t]he State's proof at trial excluded the theory that more than one person participated in the shooting of [the victim]."[46]  The Court further noted that, "[t]o the extent that McDonald's sworn confession tended to incriminate him, it tended also to exculpate Chambers."[47]

(42)   The same dynamic is not present here, where Wilson and Van Vliet were jointly indicted and charged with conspiring with each other.  Wilson's pleading guilty to conspiring with Van Vliet obviously would not tend to exculpate Van Vliet.  Unlike in *Chambers*, where the third party testified, Wilson refused to testify after being subpoenaed.  By seeking only to admit into evidence the docket sheet reflecting Wilson's

---

evidence and read to the jury.  The State, on cross-examination, elicited that McDonald had repudiated that confession, denied on the stand that he had committed the murder, and offered an alibi.  The trial court denied the petitioner's motion to treat McDonald as an adverse witness, finding that McDonald was not adverse.  The trial court also sustained the State's objection to the petitioner's attempt to have the three friends testify, based upon the hearsay rule.  Chambers contended that he had been "thwarted in his attempt to present [a] portion of his defense by the strict application of [these] Mississippi rules of evidence."  *Id.* at 290.

[44] *Id.* at 302.

[45] *Id.* (citations omitted).

[46] *Id.* at 297.

[47] *Id.*

guilty plea (and not the specific charges to which Wilson pled guilty), Van Vliet appears to have been attempting to implicate Wilson while avoiding informing the jury that Wilson had pleaded guilty to conspiring with Van Vliet.

(43)  Even if the trial court had erred, we conclude that any possible error was harmless beyond a reasonable doubt in view of the evidence supporting Van Vliet's conviction.  Under the harmless error standard, this Court looks to "whether the State has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[48]  Our conclusion is bolstered by the fact that the jury did not convict Van Vliet of either operating a clandestine drug lab or drug dealing by manufacturing methamphetamine.  Additionally, the jury verdict, by virtue of the firearm and possession of drug paraphernalia convictions, indicates that the jury determined that Van Vliet had in fact possessed methamphetamine as stated in the PFBPP charge listed in the indictment. Therefore, Van Vliet's conviction is affirmed.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

/s/ *Karen L. Valihura*
Justice

---

[48] *Purnell v. State*, 106 A.3d 337, 347 (Del. 2014) (quoting *Satterwhite v. Texas*, 486 U.S. 249, 258-59 (1988)).