FELIX M. BENNETT, Appellant, v. STATE OF DELAWARE, Appellee.

(*October* 28, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Bruce M. Stargatt* (of the firm of Morford, Young and Conaway) for appellant.

*Clement C. Wood,* Chief Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 27, 1960.

BRAMHALL, J.:

This appeal relates to the question of the sufficiency of the evidence to sustain the jury's verdict of murder in the first degree and to the conduct of the Chief Deputy Attorney General in offering in evidence certain statements of witnesses.

Defendant and his wife occupied the front bedroom of the first floor apartment at 312 Washington Street, Wilmington. Deceased and one Christine Quailes, a woman with whom he was living, occupied the rear bedroom on the same floor. There was a kitchen in the rear used in common by deceased and defendant. It had two doors, one leading into the bedroom of deceased and the other into a small alley leading from the rear window of defendant's front bedroom to the street in the rear.

At the time in question defendant was in the bedroom of deceased with deceased and the Quailes woman. They had been drinking, although there is no evidence of intoxication. Defendant and deceased had an argument with reference to the rent of the room occupied by deceased and defendant ordered deceased to move. Deceased said, "One of us is going to die tonight." Later deceased said, "Someone is going to get hurt." The witness Quailes testified that when defendant ordered deceased out of the house, defendant also threatened to kill deceased, to which deceased replied, "If you do, you will kill me tonight, because I ain't going out." During this argument deceased was lying on the bed in his bedroom. Defendant was standing between the bed and the kitchen

door. Deceased stood up and walked around the bed towards defendant. Defendant backed up towards the kitchen. He reached his hand in the drawer of the cabinet in the kitchen and pulled out a butcher knife. He then ran out the back door of the kitchen and down the alley. Deceased turned and went towards the door of his room leading into the hallway and the door leading into the alley. Deceased and defendant met just inside the entrance from the alley and outside the door of deceased's room. There defendant stabbed deceased several times with the knife. Defendant threw down the knife on the steps. He went into his room, changed his shirt, climbed out the back window of his room into the alley in an effort to escape. He was restrained, either by a tenant living upstairs— according to the tenant's testimony—or by two other persons, according to a statement given by the tenant to the police. The police found defendant sitting on a step in the alley and took him to the hospital for treatment of cuts. Prior to the arrival of the police, deceased was taken to the hospital, where he died about a week later. Defendant testified that the cuts which he received were caused by the penknife of deceased while in deceased's bedroom. The upstairs tenant stated that he caused the cuts when he struck defendant trying to restrain him. No penknife was found upon deceased and one witness testified that deceased was unarmed.

Defendant was convicted of first degree murder and appealed to this Court.

At the trial and in this appeal defendant contended there was no evidence to prove on his part a sedate and deliberate mind or formed design to kill; that there was not a scintilla of evidence to prove express malice or premeditation and that the verdict of murder in the first degree was not reasonably based upon the evidence. Defendant also complained of alleged impropriety on the part of the Deputy Attorney General relative to the production of the statements of several witnesses. These statements were produced by the Deputy

Attorney General at the request of the defendant. Upon examination by defendant's counsel, they were immediately returned. On each occasion the Deputy Attorney General requested that they be admitted in evidence. These requests were denied by the trial judge. He also instructed the jury that any ruling which should be made with respect to the introduction of evidence was not a matter for their concern. No further motion of any kind was made by counsel for defendant.

Sufficiency of evidence to warrant finding of verdict of first degree murder.

At common law the crime of murder consisted of the killing of a human being with malice aforethought, either express or implied. *State v. Jones*, 1 *Houst. Cr. Cas.* 21. This definition also describes the crime of murder in this State under the present statute, except for the fact that under the statute the offense is divided into two degrees of murder for the purpose of discrimination in the punishment to be imposed according to the proof and kind of malice with which the crime is committed, whereas, under the common law, there was only one crime. *State v. Buchanan*, 1 *Houst. Cr. Cas.* 79; *Bantum v. State*, 7 *Terry* 487, 85 *A.* 2d 741.* Malice is an essential ingredient of the crime of murder of both degrees. Without malice there can be no murder of either degree.

Murder in the first degree has been defined under the statute in this State (11 *Del. C.* § 571, as amended by 51 *Del. Laws*, c. 347, § 2, 1958) as a homicide committed with express malice aforethought. Express malice may be proved by circumstances showing a sedate, deliberate mind and

---

*Now that the Legislature of this State has abolished capital punishment and there is now no substantial difference—at least as far as the punishment of the offense is concerned—between murder of the first degree, and murder of the second degree, it would seem no longer necessary or advisable to maintain this very artificial and unsatisfactory distinction.

formed design to kill and may be shown from the circumstances surrounding the act. *Powell v. State*, 7 *Terry* 551, 86 *A.* 2d 371. The length of time that the design existed is immaterial. *State v. Prettyman*, 6 *Boyce* 452, 100 *A.* 476. That is something which is not generally susceptible of accurate measurement. *Bantum v. State, supra.* For this reason the existence of a sedate and deliberate mind as a necessary element of first degree murder is peculiarly a question for the jury to determine. *Bantum v. State, supra.* The deliberate selection and use of a deadly weapon is evidence of a formed design to kill or to do great bodily harm. *Powell v. State, supra.*

The question of whether or not the State proved the elements of first degree murder is a close one. The jury could easily have found that the elements of first degree murder were not present in this case. They could have held that the circumstances showed conclusively that defendant ran away from the deceased; that deceased had a reputation of being violent and of carrying a knife; that deceased threatened defendant—all circumstances in defendant's favor. To the contrary, the jury might well have believed that defendant ran into the kitchen for the purpose of getting a butcher knife with which to stab deceased; that defendant ran into the alley and into the entrance of the apartment, at the door of the bedroom of deceased, for the purpose of stabbing deceased; that, if defendant had been sincerely endeavoring to get away from deceased, he would have turned to the right when he ran out of the kitchen into the alley and escaped deceased entirely; that defendant after the stabbing showed consciousness of guilt by changing his shirt and running out into the alley for the purpose of escaping the police. Such findings would be sufficient to justify a verdict of first degree murder. The testimony to be believed and the inferences to be drawn therefrom were matters for the determination of the jury and their verdict in this respect cannot be disturbed.

Alleged impropriety of the Deputy Attorney General relating to the production and offer in evidence of statements of witnesses.

During the course of the trial, on three different occasions, defendant requested that the State produce statements which the witnesses had given to the police. These statements were produced and examined by counsel for defendant, who promptly returned them without comment. In each instance the State moved for the admission of the statements in evidence. Defendant objected. The trial judge first stated that he would pass upon the question when he came to it. Later he sustained defendant's objections and cautioned the jury in at least two instances that his action in ruling upon the admission of evidence should not influence them in their determination of the case.

Defendant contends that these repeated offers were obviously inadmissible and were clearly made for the purpose of persuading the jury to believe that defendant was responsible for keeping this information from them and for the purpose of creating in the minds of the jury the impression that the information contained in the statements was unfavorable to defendant since defendant would not otherwise have objected to it.

The Deputy Attorney General contended that if the defendant was going to use these statements, as he assumed he would, the jury should have the right to learn their contents for the purpose of determining whether or not the statements of the witnesses varied in any manner from their testimony on the witness stand. He stated further that in any event no harm was done since the statements did not get into the record and the Court cautioned the jury to disregard any rulings which might be made concerning the admission or rejection of evidence.

At the argument the State took the position that the mere fact that defendant called for production of the statements made them admissible, even though no use whatsoever was made of the statements by the defense. It was argued that the statements would be of assistance to the jury in passing upon the veracity of the witnesses. The State's position on the matter is novel, but we think unsupportable.

Defendant made no motion for a mistrial, withdrawal of a juror or for a continuance. Presumably, at that time at least, he was satisfied with the Court's ruling. In any event, because of defendant's failure to make such a motion, there lurks a question as to whether or not he is now in a position to ask this Court to say that he was prejudiced by the actions of the Deputy Attorney General. The trial judge not only sustained defendant's motion, but cautioned the jury to disregard everything which had transpired relating to the admission of the statements in evidence. There is respectable authority holding that, where the trial court has sustained the objection of counsel to improper statements on the part of the prosecuting attorney and has instructed the jury to disregard them the alleged objectionable statements will not be reviewed upon appeal in the absence of a request of the trial court for such further action as may be necessary to insure a fair and impartial trial. See cases cited in *Annotations in* 108 *A. L. R.* 756, *Conditions of Review,* and in 109 *A. L. R.* 1089, *Improper Offer of Evidence.* Nevertheless, we prefer to consider the question on its merits.

A prosecuting attorney represents all the people, including the defendant who was being tried. It is his duty to see that the State's case is presented with earnestness and vigor, but it is equally his duty to see that justice be done by giving defendant a fair and impartial trial. *State v. Orecchio,* 16 *N. J.* 125, 106 *A.* 2d 541; *People v. Fong Sing,* 38 *Cal. App.* 253, 175 *P.* 911; *Pell v. State,* 97 *Fla.* 650, 122 *So.* 110. An offer of improper evidence may or may not require a reversal.

Generally it depends upon the facts of each individual case. Much also depends upon the character and importance of the evidence and also the good or bad faith of counsel. *State v. Felch*, 92 *Vt.* 477, 105 *A.* 23. If incompetent testimony is offered repeatedly with knowledge of its character and for the purpose of prejudicing the jury, such offer should not stand unrebuked.

██ The statements under the state of the record were clearly inadmissible. It is true that defendant had called for their production and that they were produced. His counsel read them and promptly returned them to the State without comment. They were definitely not used in cross-examination since defendant's cross-examination of these witnesses had been completed, nor, as far as the record shows, was any attempt made to use them in any manner whatsover.

We think that the Deputy Attorney General in persisting in offering these statements in evidence, after the Court had made its ruling and had instructed the jury not to consider the offering of the statements, acted improperly. Clearly no proper purpose could have been served by their introduction in evidence at that time. Nevertheless, we do not think that his action in this respect was willful or was intended to prejudice the jury. Very likely the Deputy Attorney General was laboring under a misunderstanding as to the state of the record. He evidently assumed that defendant intended to cross-examine these witnesses as to the statements, and under such circumstances, he felt that they should be admitted in order to give the jury an opportunity of testing the veracity of the witnesses by comparing the statements with their testimony. Since at the time the offer was made defendant's cross-examinations of these witnesses had been completed, there was no basis for this assumption.

When the question as to the admission of the statements first came before the trial judge, he did not pass upon their admissibility. He obviously anticipated that the State would

renew its offer during the course of the trial. Presumably, the Court in instructing the jury to disregard these offers felt that any harm which might have been done was cured by its instructions to the jury. Defendant was apparently satisfied with the Court's ruling since he made no further complaint.

The determination of the question as to whether or not defendant was prejudiced is a matter which lies within the discretion of the trial judge. He is usually in a much better position than an appellate court in measuring the prejudicial effect, if any, of the State's offering of the statements in evidence. We do not think that we should say here that defendant was prejudiced by the action of the Deputy Attorney General.

The judgment of the Superior Court is affirmed.